**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Fred Ponder, | |
| Plaintiff, | |
| v. | C.A. No. _____ |
| Ocwen Loan Servicing, LLC, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH PLAINTIFF'S SUBPOENA DUCES TECUM TO NON-PARTY STONETURN GROUP, LLP

Defendant Ocwen Loan Servicing, LLC ("Ocwen"), respectfully files this Memorandum of Law in Support of its Motion to Quash the Non-Party Subpoena Duces Tecum issued by Plaintiff to StoneTurn Group, LLP ("StoneTurn"), and in support states as follows:

## INTRODUCTION

Plaintiff's Subpoena Duces Tecum to non-party StoneTurn (the "StoneTurn Subpoena") is not a legitimate effort to obtain relevant discovery from a non-party. Rather, it is nothing more than the latest effort in a series of broad, sweeping attempts by Plaintiff to conduct an unfettered fishing expedition into matters that are wholly irrelevant and outside the scope and time period of the claims at issue in the underlying case. The underlying lawsuit, currently pending in the Northern District of Georgia, involves three (3) limited claims for alleged statutory violations related to a Georgia mortgage loan under the Real Estate Settlement Procedures Act ("RESPA"), the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Practices Act ("FDCPA").[1]  Apparently unsatisfied with discovery responses provided by Ocwen in that case, Plaintiff has now issued several non-party subpoenas duces

---

[1] Second Am. Compl., Case No. 1:16-cv-04125-ODE-LTW, U.S. District Court for the Northern District of Georgia, Atlanta Division at ECF #53.

tecum, including the StoneTurn Subpoena, seeking testimony and documents relating to the same information Ocwen has objected to disclosing in the underlying case.[2]

The StoneTurn Subpoena seeks (among other things) testimony and documents from StoneTurn including audits conducted in connection with Consent Orders entered into by Ocwen with the New York Department of Financial Services ("NY DFS") in 2011, 2012 and 2014, all borrower loan files provided for the audits, and all documents relating to Ocwen's compliance with federal or state laws.[3]   Notably, the Consent Orders between Ocwen and NY DFS do not concern Plaintiff—a Georgia resident—or his loan secured by property in Georgia.  Thus, not only are the documents requested from StoneTurn plainly irrelevant to Plaintiff's FDCPA, FCRA, and RESPA claims in the underlying case, but the time period that involves StoneTurn falls outside the statute of limitations of Plaintiff's claims, and the documents are protected from disclosure under various state and federal banking and privacy laws.

It is unreasonable, and frankly, a waste of time and resources of the Court, the parties, and StoneTurn, to allow Plaintiff to obtain any information from StoneTurn or depose StoneTurn, because the Subpoena seeks irrelevant information, is burdensome, harassing, and grossly disproportionate to the claims at issue.  Furthermore, the information sought is already at issue in a discovery dispute between the parties themselves, and it would be more appropriately addressed by the forum court, which has familiarity with these matters.  Accordingly, the

---

[2] The StoneTurn Subpoena is related to a similar a non-party Subpoena Duces Tecum that Plaintiff recently issued to the New York Department of Financial Services Real Estate Division ("NY DFS") which seeks almost identical (and even more) documents and information.  Ocwen filed a Motion to Quash the Non-Party Subpoena to DFS in the United States District Court for the Southern District of New York, Manhattan Division, Miscellaneous Proceeding No. 1:19-mc-236, and the StoneTurn Subpoena should be quashed for many of the same reasons.

[3] Ocwen entered into certain Consent Orders with the NY DFS in 2011, 2012, and 2014.  StoneTurn, along with Boston Portfolio Advisors (another non-party), served as the "Compliance Monitor" for the Consent Order dated December 5, 2012.

StoneTurn Subpoena (attached hereto as **Exhibit A**) should be quashed in its entirety for the reasons more specifically explained below.[4]

## RELEVANT FACTUAL BACKGROUND

On November 3, 2016, Plaintiff filed a single-count FCRA Complaint against Ocwen concerning alleged credit reporting issues relating to his mortgage, which was serviced by Ocwen. He subsequently amended his complaint in January 2017, to add alleged violations under the FDCPA and RESPA, also relating to his mortgage. The parties are currently in discovery. To date, Plaintiff has served (and Ocwen has timely responded to) 32 interrogatories, 230 requests for admissions, and 62 document requests. The overwhelming majority of these requests are not appropriately limited in time or scope, do not specifically address conduct or facts relating to the pleaded statutory claims, and are wholly irrelevant to whether Ocwen has liability to Plaintiff under RESPA, the FDCPA, or the FCRA.

None of the nearly 200 discovery requests in Plaintiff's second set of discovery directly relate to Plaintiff or his mortgage loan.[5] However, Plaintiff did include two requests concerning the Consent Order entered into between Ocwen and NY DFS dated December 19, 2014. Specifically, Plaintiff requested that Ocwen produce "all reports by the Compliance Monitor identified in ¶ 9" of the December 19, 2014, Consent Order, and "all reports by the Operations or Compliance Monitors generated" pursuant to the December 19, 2014, Consent Order. On March 25, 2019, Ocwen objected to these requests on multiple grounds, including relevancy, burdensomeness, inappropriate time/scope, over breadth, disproportionality, outside the

---

[4] Ocwen has also filed a motion for protective order relating to the StoneTurn Subpoena in the Northern District of Georgia, where the case is currently pending. NDGA Case No. 1:16-cv-04125 at ECF #115.

[5] Rather, the nearly 200 additional discovery requests in the second set of discovery seek information relating to audits, Ocwen's servicing platforms, manuals and related documents about any technical defects or processing issues, and various internal policies and procedures to which Ocwen has objected.

applicable statute of limitations, banking privilege, and confidentiality.  Ocwen also objected that Plaintiff was on an improper fishing expedition that violates the spirit and rules of discovery.

Ignoring Ocwen's objections and without attempting to address the discovery issues with the District Court in Georgia, Plaintiff's counsel then served a non-party subpoena on NY DFS in April 2019.  A true and correct copy of the NY DFS subpoena is attached at **Exhibit B**. The NY DFS subpoena commanded the production of "Compliance Monitor and Targeted Examination Reports enforcing the Consent Orders entered between [NY DFS] and Ocwen Financial Corporation and Ocwen Loan Servicing, LLC including those entered on 9/15/2011, 12/15/2011, 12/5/2012, and 12/19/2014," by Saturday, May 4, 2019.  StoneTurn, along with non-party Boston Portfolio Advisors, Inc., served as the "Compliance Monitor" pursuant to the Consent Order dated December 5, 2012 between NY DFS and Ocwen.[6]

The subpoena to NY DFS seeks certain of the same documents already requested from and objected to by Ocwen in the underlying case, and the NY DFS Subpoena also requested even older (and more irrelevant) documents concerning consent orders entered into in September 2011 (before Ocwen even serviced the subject loan in this case), December 2011 (just after Ocwen began servicing), and December 2012.  StoneTurn was only involved in the December 2012 Consent Order.  Moreover, the conduct at issue in the 2011 and 2012 Consent Orders pre-dates Ocwen's servicing of Plaintiff's loan—which concerns a Georgia borrower, with a Georgia promissory note, and a Georgia Security Deed.  Accordingly, on May 3, 2019, Ocwen moved to quash the NY DFS subpoena.[7]  No ruling has been issued in that matter to date.

---

[6] Plaintiff also served Boston Portfolio Advisors, Inc., with a Subpoena Duces Tecum almost identical to the Subpoena Duces Tecum served on StoneTurn. Ocwen moved to quash that subpoena on May 10, 2019.  That is now pending as Case No. 0:19-mc-61194-RKA in United States District Court for the Southern District of Florida.

[7] U.S. District Court for the Southern District of New York, Misc. Case. No. 1:19-mc-236.

Not surprisingly, the StoneTurn Subpoena is strikingly similar to the NY DFS Subpoena.

Specifically, Plaintiff seeks the following documents and testimony from StoneTurn:

> 1.  All Audits conducted in connection with **any** Consent Order entered by Ocwen with the New York Department of Financial Services (NYDFS).

> 2. All Ocwen borrower electronic or printed loan files produced or provided to StoneTurn Group, LLP by Ocwen for audits in connection with the Consent Orders identified at ¶ 1, *supra*.

> 3. All audits, reports, evaluations, business plans (or the like), summaries or communications generated or received by you regarding the violations, complaints, problems, or compliance issues reported or discovered by StoneTurn Group, LLP  during and after the audits of Ocwen borrowers' files pursuant to the Consent Orders identified at ¶ 1, *supra*.

> 4. All documents and communications that refer or relate to Fred Ponder.

> 5. All communications and other documents, whether electronic or printed, which evidence or relate to Ocwen's compliance with federal or state laws; including, but not limited to, the Consent Orders identified at ¶ 1, *supra*.

(Ex. A, pp. 1-2.)

None of these documents has any bearing on Plaintiff's claims in the underlying case, and the Subpoena should be quashed for several reasons.  First, StoneTurn's involvement with Ocwen solely relates to the December 2012 Consent Order with NY DFS, which impacts only New York borrowers.  Plaintiff is not a New York borrower.  He is a Georgia resident, with a Georgia loan, on a Georgia property.  Second, per the terms of its engagement, the Compliance Monitor was engaged for a period of 2 years, starting in June 2013.  Thus, StoneTurn's involvement with Ocwen falls outside the applicable statutes of limitation for Plaintiff's statutory claims.  Third, StoneTurn's engagement expressly provides that any access it had to Ocwen systems or information was specifically for use during the engagement and is considered confidential supervisory information pursuant to New York's Banking Law §§ 36.10 and

Regulations, 3NYCRR, and any other applicable state and federal laws and regulations.  Fourth, upon termination of its engagement, StoneTurn was required to return all documents and material belonging to Ocwen, DFS, or any other regulator.  Therefore, it should not have any documents beyond what it has returned to Ocwen or NY DFS.

Viewed in context with Plaintiff's other discovery efforts, it is clear that Plaintiff and his counsel are simply on a mission to harass Ocwen, NY DFS, StoneTurn, and others with irrelevant, obtrusive, grossly disproportionate, and unduly burdensome requests. Ocwen has already accommodated relevant, reasonable discovery requests by Plaintiff. However, Ocwen is unwilling to allow Plaintiff to use abusive tactics or to subject it or StoneTurn to unreasonable, grossly irrelevant discovery demands, like the StoneTurn Subpoena.  As such, the StoneTurn Subpoena should be quashed in its entirety.  Alternatively, Ocwen respectfully requests that this Motion to Quash be transferred to the Northern District of Georgia where the underlying case is pending, or that this Court stay any ruling on this matter until after the forum court has issued an order on Ocwen's Motion for Protective Order as it relates to the StoneTurn Subpoena.

## ARGUMENT & CITATION TO AUTHORITIES

### I.   APPLICABLE LEGAL STANDARDS.

Discovery in all matters is limited to only that which is relevant to a party's claim or defense or is reasonably calculated to lead to the discovery of admissible evidence.  FED R. CIV. P. 26(b); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997) (explaining claims and defenses determine the scope of discovery).  Rule 45 provides that a Court <u>must</u> quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden."  FED. R. CIV. P. 45(d)(3)(A) (emphasis added).  Further, "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (1) the discovery

sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C).

## II.    OCWEN HAS STANDING TO MOVE TO QUASH THE STONETURN SUBPOENA.

A subpoena, such as the one to StoneTurn, may be quashed not only to protect the person subject to the subpoena, but also to protect one who is "affected by a subpoena" if the subpoena requires disclosure of certain "confidential research, development, or commercial information…." FED. R. CIV. P. 45(d)(3)(B); *see also U. S. v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) (holding that a party has standing to challenge a subpoena where compliance would threaten the party's legitimate interests). A party also has standing to challenge a non-party subpoena seeking the same information requested directly from the party or "where the party is seeking to protect a personal privilege or right." *Melder v. State Farm Mut. Auto. Ins. Co.*, Civ. Action No. CIVA108CV1274RWSJFK, 2008 WL 1899569, at *2 (N.D. Ga. Apr. 25, 2008). *See also Pagan-Colon v. Walgreens of San Patricio, Inc.*, 264 F.R.D. 25, 29 (D.P.R. 2010); *Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 253 (D. Me. 2008). Without such standing, such a non-party subpoena would effectively moot any discovery dispute between the parties. *Melder,* 2008 WL 1899569, at *2.

Here, Plaintiff seeks many of the same documents from StoneTurn as it previously did in its Requests for Production issued directly to Ocwen and in the NY DFS Subpoena. Any additional documents demanded from StoneTurn cover an earlier time period—arguably predating December 2012, and thus, the requests are subject to a multitude of objections.

7

Plaintiff and Ocwen already have an existing dispute concerning the scope of discovery and documents to be produced, which will be addressed by the Northern District of Georgia, where the case is pending.  The outcome of that dispute potentially impacts the duplicative non-party requests directed at StoneTurn that are the subject of this motion.  As such, Ocwen has standing to move to quash the StoneTurn Subpoena.  *See Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 303 F.R.D. 673, 678 (S.D. Fla. 2014) ("The Court finds that Plaintiff does have standing to challenge the subpoenas at issue; under Federal Rule of Civil Procedure 26(c), a party to a lawsuit may move the Court for entry of a protective order and challenge third-party subpoenas on the basis that they seek irrelevant information."); *Melder,* 2008 WL 1899569, at *2 (finding party had standing to quash non-party subpoena seeking documents which were requested directly from the party and were the subject of a discovery dispute and transferring to forum court); *Langford v. Chrysler Motors Corp.,* 513 F.2d 1121, 1126 (2d Cir. 1975) (upholding lower court's quashing of non-party subpoena in light of motion of party plaintiff where "[t]he materials sought were not only voluminous, but also they had no relevance to the main issues in the case . . .").

## III.    THE SUBPOENA SHOULD BE QUASHED IN ITS ENTIRETY.

"[T]he scope of subpoenas for production of documents pursuant to Rule 45 'is the same as the scope of discovery under Rule 26(b) and Rule 34.'"  *Dering v. Serv. Experts Alliance LLC*, 1:06-CV-00357-RWS, 2007 WL 4299968, *2 (N.D. Ga. Dec. 6, 2007); *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015), *modified on reconsideration*, 160 F. Supp. 3d 431 (D. Mass. 2016) ("A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)."  *See also Bahrami v. Maxie Price Chevrolet-Oldsmobile Inc.*, No. 1:11-CV-4483-SCJ-AJB, 2013 WL 3800336,a t *3 (N.D. Ga. June 19, 2013) ("Discussion of the scope of discovery allowed under a subpoena requires consideration of Rule 26.").

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1).  However, a court **must** quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies" and may quash or modify a subpoena if it discloses certain confidential information.  FED. R. CIV. P. 45(c)(3)(A)(iii),(B)(i)(emphasis added).  To make this determination, courts apply a balancing test, weighing the probative value of the documents sought against the burden of complying with the subpoena, considering the following factors: "relevance of the information requested, the requesting party's need for the documents, the breadth of the document request, the time period covered by the request and the burden imposed, including the expense and inconvenience to a nonparty to whom a request is made." *Se. Mech. Servs., Inc. v. Brody,* No. CIV.A.1:09CV0086-GETS, 2009 WL 3095642, at *3 (N.D. Ga. June 22, 2009).  *See also LSI Corp. v. Vizio, Inc.*, 12-MC-91068-DJC, 2012 WL 1926924, at *3 (D. Mass. May 24, 2012) (reciting same factors).  Here, the StoneTurn Subpoena should be quashed for several reasons, as the balancing test weighs heavily in favor of StoneTurn and Ocwen and against Plaintiff because the requested information is plainly irrelevant, involves New York borrowers (which Plaintiff is not), falls outside the statutes of limitations, and there is no demonstrated need for the information.

## A.      The Documents Sought Are Not Relevant to Plaintiff's Alleged Claims.

The StoneTurn Subpoena seeks documents that could not possibly concern "any nonprivileged matter that is relevant to any party's claim or defense."  FED. R. CIV. P. 26(b)(1). Ocwen's Consent Orders with NY DFS and StoneTurn's related involvement as a Compliance Monitor for the December 2012 Consent Order have nothing to do with Plaintiff, the subject mortgage loan, or his alleged claims. Liability in the underlying case does not turn on any audits conducted in connection with Consent Orders entered into between Ocwen and the NY DFS, or

New York borrower files unrelated to Plaintiff's loan, or related documents from the years prior to Ocwen's servicing of Plaintiff's loan.  Rather, liability will be determined by the RESPA, FCRA, and FDCPA statutes themselves.

Furthermore, the requested documents clearly fall outside the applicable statutes of limitation.  Plaintiff filed his FCRA claim in November 2016 and his RESPA and FDCPA claims in January 2017.  Yet, in the StoneTurn Subpoena, he attempts to reach far back into the past to obtain reports, audits, loan files (of New York borrowers), and related communications concerning the consent orders entered into in New York in 2011 and 2012 – well before any of his claims could have accrued.  *See Saade v. Sec. Connection Inc.*, 282 F. Supp. 3d 414, 419 (D. Mass. 2017), *reconsideration denied*, CV 17-10168-NMG, 2018 WL 651324 (D. Mass. Jan. 30, 2018) (noting RESPA's three-year statute of limitation); *Harrington v. CACV of Colorado, LLC,* 508 F. Supp. 2d 128, 131 (D. Mass. 2007) ("The FDCPA 'contains a jurisdictional, one-year statute of limitations.'"); *Richardson v. Fleet Bank of Mass.,* 190 F. Supp. 2d 81, 85 (D. Mass. 2001) ("The FCRA provides that an action to enforce liability must be brought 'within two years from the date on which the liability arises.'")  It is undisputed that Ocwen only began servicing the subject loan in November 2011.  StoneTurn had no involvement with compliance monitoring outside the scope of the directives issued in December 5, 2012 Consent Order; therefore, any information StoneTurn would have falls outside the relevant time period for Plaintiff's claims.

Finally, but equally important, the burdens of production are wholly disproportionate to any benefit of disclosure, considering StoneTurn's limited involvement, the timeframe at issue, the fact that the December 2012 consent order only involves New York borrowers—and not Plaintiff (a Georgia resident), and the statutory damages available under RESPA, FCRA, and the FDCPA.

Rule 26 commands that the Court:

"must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . .[or] the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

FED. R. CIV. P. 26(b)(2)(C); *United Parcel Svc. of Am., Inc. v. The Net, Inc.*, 222 F.R.D. 69, 71 (E.D.N.Y. 2004) ("[T]he maturation of Rule 26(b)(2) over several decades allows judges to use the limitations of Rule 26(b)(2) with increasing frequency and with an eye toward equity."). *See also Shannon v. Albertelli Firm, P.C.*, No. 14-11832, 2015 WL 2114055, at *4 (11th Cir. May 7, 2015) ("[W]e agree with the district court that [the] discovery requests were simply a 'fishing expedition' whose burdens or expenses 'outweigh[ed] [their] likely benefit.'"); *Yourga v. City of Northampton*, CV 16-30167-MGM, 2018 WL 1053532, at *2 (D. Mass. Feb. 26, 2018) (granting motion for protective order in part and citing Rule 26(b)(2)(C)); *Hernandez v. Hendrix Produce, Inc.*, CV613-053, 2014 WL 953503, at *2-3 (S.D. Ga. Mar. 10, 2014) (granting motion to quash subpoena seeking information unrelated to core focus of their case); *Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 527 (N.D. Ga. 2012) (declining to enforce broad discovery of private documents without limitations where requests were "like a bulldozer that levels an entire hill in the hopes of finding some specks of gold"); *Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-cv-81004, 2010 WL 623699, at * 9 (S.D. Fla. Feb. 23, 2010) (explaining Rule 26(b)(2)(C) imposes "a 'rule of proportionality' which requires discovery to be restricted where the burden or expense outweighs the proposed benefit").  For these reasons alone, an order quashing the StoneTurn Subpoena is appropriate.

**B.      State Laws Preclude Disclosure of the Requested Documents.**

The StoneTurn Subpoena should be quashed because the materials in the documents requested are confidential in nature and are protected from disclosure by New York and Georgia Banking laws.[8]

New York Banking Law § 36 provides a broad protection from disclosure for all documents concerning or arising from a regulatory examination or investigation:

> All reports of examinations and investigations, correspondence and memoranda concerning or arising out of such examination and investigations . . . *shall be confidential communications, shall not be subject to subpoena and shall not be made public* unless, in the judgment of the superintendent, the ends of justice and the public advantage will be subserved by the publication thereof, in which event the superintendent may publish or authorize the publication of a copy of any such report or any part thereof in such manner as may be deemed proper or unless such laws specifically authorize such disclosure.

NY Banking Law § 36(10) (emphasis added).  New York courts have consistently enforced these protections from disclosure of regulatory supervisory materials. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 14-CV-7126 (JMF), 2016 WL 6779901, at *5 (S.D.N.Y. Nov. 16, 2016) (denying motion to compel production of documents, applying N.Y. Banking Law § 36(10), and advising that "New York Banking Law protects DFS materials from disclosure."); *Clark v. Flynn*, 9 A.D.2d 249, 252 (N.Y. App. Div. 1959) (holding that letter from Superintendent to examined bank regarding the Department's report and recommendation fell within the scope of documents subject to the New York banking privilege); *see also Matter of Estate of Saxon*, 176 Misc. 2d 724, 727, 673 N.Y.S.2d 625 (N.Y. Sur. 1998) ("witness by law [was] prohibited from revealing any aspect of the bank examiner reports conducted by the Superintendent"). So long as the Superintendent's refusal to authorize the publication of a document is neither arbitrary or capricious, courts uphold a party's claim of statutory privilege. *See, e.g., Clark*, 9 A.D.2d at 251.

---

[8]   Ocwen has already objected to the production of such documents in discovery on these and other grounds in the underlying case.

A closer examination of the StoneTurn Subpoena demonstrates the materials sought are protected from disclosure by the New York Banking Law.  Among other things, the StoneTurn Subpoena seeks audit files and related documents in connection with any Consent Orders entered into by Ocwen with the NY DFS, all Ocwen files provided to StoneTurn by Ocwen for the audits in connection with said Consent Orders, and all documents relating to Ocwen's compliance with federal or state laws.  These documents would include information pertaining directly to NY DFS examinations or investigations.  As such, they should not be subject to subpoena under the New York Banking Law. *See* NY Banking Law § 36(10).

Likewise, Georgia Department of Banking and Finance offers similar protections from disclosure of documents relating to its regulatory investigations. *See Fed. Ins. Deposit Corp. v. Briscoe*, Civil Action No. 1:11-cv-2303-SCJ, 2014 WL 12775663, at *3 (N.D. Ga. Feb. 4, 2014) (denying motion to compel documents from non-party Ga Dep't of Banking and Finance relating to examination and reports). Under O.C.G.A. § 7-1-70, all records of the Georgia Department of Banking and Finance are confidential.  Certain documents are never subject to disclosure absent a specific order from a court which "holds the public interest in the safety and soundness of the banking system and its regulation to be outweighed by other interests of justice." O.C.G.A. § 7-1-70(c)(3).  This category includes internal investigations, documents, and notes which reflect the deliberative processes of employees; advisory opinions; notes and memos of the Department that are not purely factual in nature; and other similar materials or notes. *Id.*

Again, whether Ocwen violated its statutory obligations to Plaintiff—a Georgia resident—under the FCRA, FDCPA or RESPA, as alleged in the underlying case does not turn on whether Ocwen complied with the Consent Orders issued by NY DFS.  StoneTurn's actions as the compliance monitor for the December 2012 Consent Order do not involve Plaintiff (who is not a New York borrower) or change Ocwen's obligations under the referenced statues.

Moreover, the time period where StoneTurn was involved is outside the statutes of limitations for the alleged claims.  Because the requested testimony and documents from StoneTurn do not alter Ocwen's federal statutory responsibilities, this information is not germane to the issue of Ocwen's liability to Plaintiff.  As such, the StoneTurn Subpoena should be quashed.

### C.   The Federal Banking Examination Privilege Protects The Disclosure of the Requested Documents.

The StoneTurn Subpoena should also be quashed because the documents sought are privileged pursuant to the federal banking examination privilege.  "Federal courts 'have long recognized that the report of a bank examiner is protected by a qualified privileged.'" *Rouson ex rel. Estate of Rouson v. Eicoff*, No. 04-CV-2734 ARR KAM, 2006 WL 2927161 (E.D.N.Y. Oct. 11, 2006) (citing *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992)); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 580-82 (E.D.N.Y. 1979). *See also In re JPMorgan Chase Mortgage Modification Litig.*, 11-MD-02290-RGS, 2012 WL 5947757, at *2 (D. Mass. Nov. 27, 2012) (noting bank examination privilege, citing *In Re Subpoena*, and declining to order production of privileged documents as request as premature). This privilege, often referred to as the bank examination privilege, "is firmly rooted in practical necessity," *In re Subpoena*, 967 F.2d at 633, and is "'designed to promote the effective functioning of an agency by allowing the agency and the regulated banks the opportunity to be forthright in all communications.'" *Mktg. Investors Corp. v. New Millennium Bank*, No. 3:11-CV-1696-D, 2012 WL 1357502, at *7 (N.D. Tex. Apr. 16, 2012) *report and recommendation adopted in part, rejected in part on other grounds*, 2012 WL 2900606 (N.D. Tex. June 5, 2012) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995)).

The bank examination privilege "protects communications between banks and their examiners in order to preserve absolute candor essential to the effective supervision of the

banks." *Linde v. Arab Bank, PLC*, No. 04-2799, 2009 WL 3055282, at *1 (E.D.N.Y. Sept. 21, 2009) (citations omitted). The privilege "covers the opinions and recommendations of bank examiners and the banks' responses to the examiners' inquiries." *Id.* (citing *Bankers Trust*, 61 F.3d at 471; *In re Subpoena*, 967 F.2d at 633-34; *Bank of China v. St. Paul Mercury Ins. Co.*, No. 03-9797, 2004 WL 2624673, at *4 (S.D.N.Y. Nov. 18, 2004)); *see also Rouson*, 2006 WL 2927161 at *4 (citing *Franklin Nat'l Bank*, 478 F. Supp. at 581). Moreover, "[c]ourts have justified the privilege because of the distinctively continuous and informal process of bank regulation, which especially requires candor from regulated entities." *FHFA v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 273 (S.D.N.Y. 2013) (citations omitted). Indeed, the court in *JPMorgan Chase* stated:

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency. This relationship is both extensive and informal . . . in the sense that it calls for adjustment, not adjudication . . . . These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*Id.* (quoting *In re Subpoena*, 967 F.2d at 633).

In this case, the StoneTurn Subpoena seeks documents that would contain the opinions, recommendations, and analyses of StoneTurn in its role as the Compliance Monitor for the December 2012 Consent Order.  The cases make it clear that the banking examination privilege protects "agency opinions and recommendations and banks' responses thereto." *Bankers Trust*, 61 F.3d at 471. *See also FHFA v. HSBC N. Am. Holdings Inc.*, No. 11-6189, 2014 WL 1909446, at *3 (S.D.N.Y. May 13, 2014) (holding that bank examination privilege applied to documents sent to banking regulator reflecting items to discussed at a joint meeting, documents providing narrative answers to regulator's questions, and documents providing qualitative reviews of the regulated entities operations).  Thus, the StoneTurn documents are protected from disclosure by

15

the banking examination privilege.  Plaintiff has not and cannot show any good cause to override the privilege in this case.  Therefore, the StoneTurn Subpoena should be quashed.

## IV.     This Motion May Be Transferred to the Northern District of Georgia.

In the event the Court does not want to exercise jurisdiction over this dispute, this Court can and should transfer Ocwen's Motion to Quash to the forum court for resolution. Rule 26(c) provides, in pertinent part, that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending - or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." Rule 45(c)(3) likewise provides that the "issuing court" may quash or modify a subpoena. Rule 45(c) "is not intended to diminish rights conferred by Rules 26 or 37 or any other authority." Fed. R. Civ. P. 45(c)(3) Advisory Committee's Note (1991).

Numerous courts, including this one, have recognized that resolution of discovery disputes may be resolved by the court where the action is pending.  *See St. Clair Cty., Illinois v. Trinity Highway Indus., Inc.*, 16-MC-91286-IT, 2016 WL 5346943, at *1 (D. Mass. Sept. 23, 2016) (transferring motion to quash subpoena to forum court when litigant argued that "discovery sought [was] irrelevant and commenting that the forum court "which is already familiar with the issues in this case would be better suited to hear the motion to quash."); *The Dispatch Printing Co. v. Zuckerman*, 16CV80037, 2016 WL 335753, at *4 (S.D. Fla. Jan. 27, 2016) (transferring motions to quash and to compel to the forum court due to "the risk of inconsistent discovery rulings, the duration and complexity of the underlying litigation, and the interests of judicial economy and efficiency"); *United States v. Star Scientific, Inc.,* 205 F. Supp. 2d 482 (D. Md. 2002) (transferring motion to compel against non-party to forum court for resolution).  This is particularly prudent where, as here, resolution of the discovery dispute involves resolution of the breadth and scope of discovery, where the forum court is well versed

in the underlying facts, and where the forum court is willing to adjudicate the dispute. Moreover, the interests of justice and judicial economy weigh heavily in favor of transfer.

**V.      Alternatively, This Court Should Stay Resolution of This Motion Pending the Decision of the Forum Court on Ocwen's Related Motion for Protective Order.**

While Ocwen believes this Court has discretion to quash the StoneTurn Subpoena entirely or transfer this Motion to the forum court for adjudication, in the alternative, this Court should stay the proceedings on this Motion and await the forum court's ruling on its related motion for protective order filed in the Northern District of Georgia. Thereafter, this Court can enter an order on this Motion to Quash which is not inconsistent with the ruling on that will be issued by the Northern District of Georgia.

Even where transfer of a motion to quash is inappropriate, an order staying the motion pending action by the forum court is appropriate.  *See Hartz Mountain Corp. v. Chanelle Pharm. Veterinary Products Mfg. Ltd.*, 235 F.R.D. 535, 536 (D. Me. 2006) (issuing court "may stay its action on the motion and permit the party seeking to quash the subpoena to make a motion for a protective order in the court where the trial is to take place and then defer to the trial court's decision."); *Clausnitzer v. Fed. Express Corp.,* No. 1:07-CV-1923-GET-JFK, 2007 U.S. Dist. LEXIS 61699, at *12 (N.D. Ga. Aug. 22, 2007).  In *Clausnitzer,* the court stayed a non-party's Rule 45 motion pending action by the forum court, and stated that after the forum court's ruling is filed with the issuing court, a ruling not inconsistent with the forum court's decision would be entered. *Id.* at *13; *see also Kearney v. Perrigo Co.,* 172 F.R.D. 381, 383 (N.D. Ill. 1997) (same).

Rule 26(c) permits the issuing court to stay its proceedings on a non-party's motion for a protective order pending action by the trial court, and to defer to the trial court's resolution of that motion.  The same principle may be applied here, allowing abstention on a motion to quash,

followed by deference to the trial court's resolution of that motion. *In re Sealed Case,* 141 F.3d 337, 343 (D.C. Cir. 1998) *cited with approval in Hartz Mountain Corp.*, 35 F.R.D. at 536.  In the event the Court declines to quash the StoneTurn Subpoena or the transfer this Motion to the Northern District of Georgia, Ocwen respectfully requests a stay of this Court's action on this Motion pending ruling by the forum court on Ocwen's related motion, as it will allow this Court to enter an order not inconsistent with the forum court's discovery ruling and will be the most efficient use of judicial resources.

## VI. IF THIS MOTION IS NOT TRANSFERRED, STAYED, OR DENIED, AT A MINIMUM, THE SUBPOENA SHOULD BE MODIFIED.

If the Court ultimately decides that the testimony and documents sought from StoneTurn should be allowed and produced pursuant to the StoneTurn Subpoena, this Court should exercise its power under Rule 45 to modify the Subpoena so that the testimony of StoneTurn and the production of documents are limited to an appropriate time period and an appropriate scope. Moreover, this Court should also allow for redactions of irrelevant, confidential, and/or proprietary information that is unrelated to Plaintiff's statutory claims in the underlying case. Further, such documents should be produced subject to an agreed upon confidentiality order. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985) ("Rule 26(c) gives the district court discretionary power to fashion a protective order . . . which does not depend on a legal privilege."); *Jee Family Holdings, LLC v. San Jorge Children's Healthcare, Inc.*, 297 F.R.D. 19, 21 (D.P.R. 2014) (as a party to the lawsuit, has standing to challenge the subpoenas to the extent they (1) seek irrelevant information) (citing *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979)).  *See also Sunshine Shredding, LLC v. Proshred Franchising Corp.*, No. 11-22432-MC, 2011 WL 4591935, at *3 (S.D. Fla. Sept. 30, 2011) (granting motion to quash subpoena and for protective order where confidential bank documents were marginally relevant

to the underlying claims, which was "outweighed by the sensitive and private nature of such records").

This Court may issue an order "forbidding inquiry into certain matters." FED. R. CIV. P. 26(c)(1)(D). A protective order issued pursuant to Fed. R. Civ. P. 26(c) is based on the standard of "good cause." *See* Fed. R. Civ. P. 26(c)(1) ("[A] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."). Here, if the Court ultimately decides that certain of the documents should be produced, the documents should be relevant, redacted, and subject to an agreed confidentiality order.

## CONCLUSION

In sum, there is nothing relevant to either party's claims or defenses in this case that Plaintiff could obtain from production of the documents demanded in the StoneTurn Subpoena. Moreover, the subpoenaed documents are highly confidential and protected from disclosure by federal and state banking privileges. Accordingly, for the reasons discussed herein, the StoneTurn Subpoena should be quashed in its entirety.

In the alternative, Ocwen respectfully requests that this Motion be transferred to the Northern District of Georgia for adjudication, or that any decision by this Court be stayed pending resolution of the discovery dispute by the forum court, or that the StoneTurn Subpoena be modified as set forth above.

**LOCKE LORD LLP**

*/s/ Stephanie Sprague*
Joseph A. Farside, Jr. (BBO #667187)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903-2499
401.274.9200
401.276.6611 (fax)
joseph.farside@lockelord.com

and

Stephanie Sprague (BBO #667714)
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA  02199
617.239.0100
617.227.4420 (fax)
stephanie.sprague@lockelord.com

*Attorneys for Ocwen Loan Servicing, LLC*

Dated: May 17, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May, 2019, I filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH PLAINTIFF'S SUBPOENA DUCES TECUM TO NON-PARTY STONETURN GROUP, LLP** with the Clerk of the Court, using the CM/ECF system.  I further certify that on this 17th of May, 2019, I caused a copy thereof to be e-mailed to the following persons:

John D. Buretta
Counsel for Non-Party StoneTurn Group, LLC
*jburetta@cravath.com*


Orion Gregory Webb
Counsel for Plaintiff Fred Ponder
*owebb@smithwelchlaw.com*


*/s/ Stephanie Sprague*
Stephanie Sprague (BBO #667714)

*Attorney for Ocwen Loan Servicing, LLC*

71558983v.3 1006335/01554